RUSSELL J. FRACKMAN (SBN 49087)
rjf@msk.com
KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
AARON M. WAIS (SBN 250671)
amw@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff and Counterdefendant
UMG RECORDINGS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TROY AUGUSTO d/b/a ROAST BEAST MUSIC COLLECTABLES AND ROASTBEASTMUSIC, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO.  2:07 CV 3106 SJO (AJWx)<br><br>Honorable S. James Otero<br><br>**MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF PLAINTIFF AND COUNTERDEFENDANT UMG RECORDINGS, INC.**<br><br>Pretrial Conf. Date: June 16, 2008<br>Pretrial Conf. Time: 9:00 a.m.<br>Trial Date:          June 24, 2008 |

Mitchell Silberberg & Knupp LLP
1835258.4

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

# MEMORANDUM OF CONTENTIONS OF LAW AND FACT

## I. INTRODUCTION

This copyright infringement action was commenced by UMG Recordings, Inc. ("UMG") against defendant Troy Augusto d/b/a Roastbeast Music Collectibles ("Augusto") because Augusto was offering for sale, selling, and distributing over eBay, UMG's copyrighted sound recordings without consent or authorization. Augusto counterclaimed, alleging that UMG's notices of infringement to eBay "knowingly" and "materially misrepresented" that his conduct was infringing. Each party moved for summary judgment on the complaint and on the counterclaim. These cross summary judgment motions are pending.

## II. Claims and Defenses

### A. Summary Statement – UMG's Claim for Copyright Infringement

Augusto infringed UMG's copyrights in violation of UMG's exclusive right of distribution.

### B. Elements Required To Establish UMG's Claim For Copyright Infringement

In order to prove copyright infringement, UMG need only prove: (1) ownership of valid copyrights and (2) violation of one of the exclusive rights granted to a copyright owner (in this case the distribution right, 17 U.S.C. § 106(3)). *See generally* 4 M. & D. Nimmer, *Nimmer On Copyright* § 13.01 (2006); *see* 9th Cir. Civ. Jury Instr. 17.4 (2007); 17 U.S.C. §501(a)-(b). Copyright infringement is "willful" when it is committed with knowledge or in reckless disregard of the copyright holder's rights. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2nd Cir. 2001) (citations and quotations omitted); *UMG*

*Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164 (E.D. Cal. 2006); *A&M Records, Inc. v. General Audio Video Cassettes, Inc.*, 948 F. Supp. 1449, 1457 (C.D. Cal. 1996); *see also Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) ("[t]o refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief.").

Once UMG proves copyright infringement, it is entitled to entry of a permanent injunction preventing further infringement. *See* 17 U.S.C. § 502; *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121(9th Cir. 2000). Also, once copyright infringement has been established, "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . ." 17 U.S.C. § 504(c)(1). UMG is entitled to a statutory damage award in an amount ranging from $750 to $30,000 for each work infringed, or up to $150,000 for each work infringed if the infringement is willful. 9th Cir. Civ. Jury Instr. 17.27 (2007); 17 U.S.C. § 504(c)(2). A plaintiff does not need to prove any actual damages to be entitled to an award of statutory damages. *See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001).

### C.  Key Evidence In Support of UMG's Claims.

UMG owns the copyrights to the fourteen sound recordings at issue, which are subject to eleven copyright registrations: (1) Hinder, "Better Than Me" (SR-379-192); (2) Hinder, "How Long" (SR-379-192); (3) Hinder, "Lips of An Angel" (SR-379-192); (4) Hinder, "Get Stoned" (SR-387-509); (5) Nelly Furtado, "Promiscuous" (SR-391-617); (6) Nelly Furtado, "Say It Right" (SR-387-509); (7)

1  Rich Boy, "Throw Some D's" (SR-398-764); (8); Dirty Pretty Things, "Bang Bang
2  You're Dead" (SR-394-696); (9) Lionel Richie, "What You Are" (SR-391-372);
3  (10) The Killers, "When You Were Young" (SR-398-799); (11) The Killers,
4  "Bones" (SR-398-798); (12) The Killers, "Read My Mind" (SR-398-798); (13)
5  Bone Thugs-N-Harmony, "Just Vibe" (SR-400-656); and (14) Gwen Stefani,
6  "Wind It Up" (SR-400-613) (collectively, the "UMG Promo CDs"). The UMG
7  Promo CDs were registered within five years of their publication.

8    UMG never transferred ownership of the UMG Promo CDs and never gave
9  Augusto consent to sell or distribute the UMG Promo CDs. Despite the fact that
10 Augusto did not have consent from UMG to sell or distribute the UMG Promo
11 CDs, Augusto advertised, offered for sale, or sold to the public each of the UMG
12 Promo CDs through auctions on eBay.

13   Augusto's infringement was willful. Before advertising, offering for sale, or
14 selling the UMG Promo CDs, Augusto knew or recklessly disregarded that such
15 activities infringed UMG's distribution right under the Copyright Act. In fact,
16 Augusto previously had received numerous notices of infringement from other
17 copyright owners unrelated to UMG asserting that Augusto's sale of promotional
18 CDs infringed their rights. Further, Augusto previously had entered into a consent
19 judgment in an action brought by two record labels (again, record labels unrelated
20 to UMG) based on the very same conduct engaged in here – unlawfully offering to
21 sell and selling promotional CDs. The consent judgment included a specific
22 finding that Augusto infringed the distribution right of those record labels by
23 offering promotional CDs over eBay. UMG itself notified Augusto directly -- on
24 two different occasions -- that his sale of promotional CDs violated its rights.

25   Finally, Augusto has admitted that he is aware of the nature of promotional
26 CDs and, in fact, prominently identifies his product as "Promo CDs" and uses such
27 terms as "rare" and "INDUSTRY EDITION – NOT SOLD IN STORES" to
28 advertise them. Augusto also has admitted that he knows that promotional CDs

Mitchell Silberberg & Knupp LLP
1835258.4

3

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

contain language that indicates they are licensed for limited purposes to specific individuals and that sale or transfer is not authorized by the record companies.

### D. Summary Statement – Augusto's Affirmative Defense

*Affirmative Defense* **1**: first sale defense

### E. Elements Required To Establish Augusto's Affirmative Defense

To prevail on his first-sale defense, Augusto must prove that he was the "*owner* of a *particular* copy or phonorecord lawfully made" or "authorized by such *owner* … to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. § 109(a) (emphasis added). The first-sale defense, however, "[does] not, unless authorized by the copyright owner, extend to any person who has acquired possession of the copy or phonorecord from the copyright owner by rental, lease, loan or otherwise, without acquiring ownership of it." *Id.* § 109(d). Those who merely possess copies do not have a first sale defense. *See* H.R. Rep. No. 94-1476, at 80; S. Rep. No. 94-473, at 72-73 (1975).

Augusto bears the burden of tracing the chain of title of each specific copy of the UMG Promo CDs he auctioned to the original alleged transfer of ownership, and showing the existence of a first sale for that particular UMG Promo CD. *See* H.R. Rep. No. 94-1476, at 81 ("The defendant in such actions clearly has the particular knowledge of how possession of the particular copy was acquired, and should have the burden of providing this evidence to the court. It is the intent of the Committee, therefore, that in an action to determine whether a defendant is entitled to the [first sale] privilege established by Section 109(a) and (b), … the burden of proving whether a particular copy was lawfully made or acquired should rest on the defendant.").

### F. Key Evidence In Opposition to Augusto's Affirmative Defense

UMG (like other record companies) *licenses* a small number of "promotional" CDs to select individuals, often before a commercial release to the public of a full album, for purposes of promoting and advertising that commercial release. These individuals (which UMG selects from proprietary lists maintained and updated by various departments within UMG) are in or associated with the music business, such as reviewers, disc jockeys, and radio stations, and are in a position to generate interest in UMG's commercial recordings among the consuming public.

UMG does not sell promotional CDs, UMG receives no payment for them, UMG expressly retains ownership of them, and their recipients are not to sell or transfer them. Nor does UMG give promotional CDs as gifts or abandon them. Because UMG retains ownership of promotional CDs, there is no "first sale." In fact, each of UMG's promotional CDs contains the name of one of UMG's record labels and language indicating it is the property of UMG and its sale or transfer is expressly prohibited under the terms by which it is provided and accepted. This license is printed on the CD itself and/or on its packaging and has included the following language:

> "This CD is the property of the record company and is licensed to the intended recipient for personal use only. Acceptance of this CD shall constitute an agreement to comply with the terms of the license. Resale or transfer of possession is not allowed and may be punishable under federal and state laws."

Augusto admits that shorter but similar language contained on some promotional CDs (*e.g.*, "For Promotional Use Only -- Not For Sale") has the same meaning.

When UMG mails its promotional CDs to the select individuals, each promotional CD is sent with a return address. Those promotional CDs which are

not accepted by the recipients or are not deliverable are returned to UMG and destroyed. Those that are accepted create a license and not a transfer of ownership. Consistent with the fact that UMG *licenses* its promotional CDs to recipients (and does not transfer ownership of the promotional CDs to them), UMG polices unauthorized sales of its promotional CDs over eBay. UMG's policing efforts include locating auctions on eBay that offer UMG's promotional CDs for sale and requesting that eBay remove the auctions pursuant to a procedure set up and implemented by eBay known as the Verified Rights Owner ("VeRO") program. Additionally, if UMG determines that a recipient of its promotional CDs has been offering them for sale, it attempts to delete that individual from the lists of persons to whom promotional CDs are provided.

Augusto did not receive the UMG Promo CDs from UMG. Because the UMG Promo CDs were licensed, and title and ownership did not pass to their initial recipients, Augusto could not himself receive title and ownership. In any event, Augusto cannot identify from whom he obtained any of the UMG Promo CDs, nor can he demonstrate the identity of the original recipients or otherwise relate any of the Promo CDs at issue to the source of any alleged first sale.

### G.  Summary Statement – Augusto's Counterclaim

The single count counterclaim of Augusto is limited to an alleged violation of Section 512(f) of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 512(f).

### H.  Elements Required To Establish Augusto's Counterclaim

In order to prevail on his counterclaim, Augusto must show that UMG sent a takedown notice pursuant to Section 512(f) and that it "knowingly materially

Mitchell Silberberg & Knupp LLP

1835258.4

6

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

1  misrepresent[ed]" that Augusto's auction of UMG's promotional CDs was
2  infringing and that Augusto was damaged as a result.  17 U.S.C. § 512(f) ("Any
3  person who knowingly materially misrepresents under this section – (1) that
4  material or activity is infringing … shall be liable for any damages, including costs
5  and attorneys' fees, incurred by the alleged infringer…").  *See also* S. Rep. No.
6  105-90, at 49 (1998) (Section 512(f) "is intended to deter knowingly false
7  allegations to service providers").
8       To prove that UMG made a knowing and material misrepresentation,
9  Augusto must prove that his complained of activity was not infringing ***and*** that
10  UMG did not have a subjective, good faith belief "that the use of the material in
11  the manner complained of [was] not authorized."  17 U.S.C. §§ 512(c)(3)(A)(v),
12  512(f); *Motion Picture Ass'n of America, Inc. v. Rossi*, 391 F.3d 1000, 1004 (9th
13  Cir. 2004) ("The overall structure of § 512 … supports the conclusion that
14  § 512(c)(3)(A)(v) imposes a subjective good faith requirement upon copyright
15  owners.").  Under Section 512(f) only "actual knowledge of misrepresentation" is
16  actionable.  *Id*. at 1004-05.  Augusto's showing must be supported by "substantial
17  evidence."  *Id*. at 1005.
18
19      **I.**    <u>**Key Evidence In Opposition to Augusto's Counterclaim**</u>
20       UMG did not provide takedown notices to eBay under the DMCA, but rather
21  pursuant to the rules of eBay's VeRO program.  The VeRO program is a voluntary
22  membership program, set up and implemented by eBay under rules eBay
23  promulgates, that provides its own procedure to report claimed infringements by
24  eBay sellers outside the confines of the DMCA.  In its description of the VeRO
25  program, eBay does not mention the DMCA, including in its instructions for
26  sending VeRO notices.  Neither does the form VeRO "Notice of Claimed
27  Infringement" provided by eBay mention the DMCA.  Significantly, each notice
28

Mitchell
Silberberg &
Knupp LLP

1835258.4

7

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

1   sent by UMG (through its trade association) expressly disclaimed the applicability
2   of the DMCA.
3       In addition, DMCA notices must be sent to the "designated agent" registered
4   with the Copyright Office.  When UMG sent the VeRO notices that are the subject
5   of Augusto's counterclaim, eBay's filing with the Copyright Office identified its
6   registered DMCA agent as Jay Monahan with the e-mail address for notice as
7   registeredagent@ebay.com.  UMG's VeRO notices were not sent to eBay's
8   designated DMCA agent, but rather to the VeRO Program at a VeRO program e-
9   mail address, vero@ebay.com.
10      UMG did not make a material misrepresentation.  As described above,
11  Augusto infringed UMG's copyrights and, therefore, there were ***no***
12  misrepresentations.  Further, UMG had a "subjective, good faith belief" that
13  Augusto's selling of promotional CDs was infringing.  UMG did not have the
14  requisite "actual knowledge" that any claim of infringement was false.  UMG's
15  subjective good faith belief is demonstrated by:
16      UMG's Practice:  In the belief that the distribution of promotional CDs
17  violated its rights, UMG implemented a procedure, which it has used for at least
18  four years, carefully to search eBay to identify and locate specific promotional
19  CDs that belong to it.  These results were verified by the RIAA before any notice
20  of infringement was sent.
21      The Language on the UMG Promo CDs:  The UMG Promo CDs contained
22  explicit language, including that they were the property of UMG, they were
23  licensed, could not be sold, and that acceptance of the CDs constituted agreement
24  to the license terms.
25      UMG's Notices Were Consistent with Custom and Practice:  Record
26  companies, including UMG, have distributed promotional recorded product for
27  decades, whether in the form of vinyl albums, cassettes, or CDs.  It is widely
28  known and understood in the music business that they are made in limited

Mitchell Silberberg & Knupp LLP

1835258.4

8

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

quantities, for limited purposes, and are not to be given away or sold by the recipients. Further, UMG was not the only copyright holder to believe and assert that the sale of promotional CDs over eBay infringed copyrights. In addition to UMG, Augusto received notices of claimed infringement based on his auction of promotional CDs from possibly more than ten companies unrelated to UMG, including Warner Bros. and Capitol Records. Indeed, on occasion, Augusto even complied with the request to remove eBay auctions of promotional CDs. UMG's belief in its claims was not unique but was shared by many others in the industry.

<u>UMG Did Not Target Augusto and Had No Ulterior Motive</u>: UMG had no ulterior motive in sending its notices. UMG has sent notices of claimed infringement to many eBay sellers of its promotional CDs. UMG did not attempt to prevent Augusto from selling lawfully acquired commercial CDs. Augusto is the only one to claim a violation of Section 512(f).

<u>Augusto's Consent Judgment</u>: UMG was aware that Augusto had agreed to the entry of a final consent judgment in an action brought by two record labels unrelated to UMG based on the very conduct engaged in by Augusto here and in which Augusto consented to an order that he infringed the distribution right by offering promotional CDs over eBay.

<u>eBay's Website</u>: eBay's website confirms that "[m]any rights owners believe that listing these items infringes on their copyrights."

Finally, Augusto did not incur any damages as a result of any violation of section 512(f). To the contrary, Augusto sent counter-notices to eBay's VeRO program to restore his auctions or, alternatively, privately sold the UMG Promo CDs to individuals outside of eBay.

### J.     **Summary Statement – UMG's Affirmative Defenses**

UMG is not pursuing any affirmative defenses.

### K. Elements Required To Establish UMG's Affirmative Defenses

UMG is not pursuing any affirmative defenses.

### L. Key Evidence In Support of UMG's Affirmative Defenses

UMG is not pursuing any affirmative defenses.

### M. Anticipated Evidentiary Problems

The following anticipated evidentiary problems are the subject of motions *in limine:*

1. UMG anticipates that Augusto will seek to introduce evidence of or argue that UMG has not sued other sellers of promotional CDs. Such evidence is irrelevant, will confuse the jury and waste time.

2. UMG anticipates that Augusto will attempt to testify or opine on the general or common practices of the music industry as it relates to promotional CDs. Such testimony would constitute an inadmissible lay opinion or expert opinion by a non-expert.

3. UMG anticipates that Augusto's counsel will ask questions covered by the attorney-client and work product privileges as to the legal basis underpinning UMG's good faith belief that its notices of infringement were proper, which would force UMG to assert the privilege. Such questions should be prohibited because any answers would be irrelevant to UMG's subjective good faith belief and repeated invocations of the attorney-client privilege would cause undue prejudice to UMG.

4. UMG anticipates that Augusto will seek to introduce evidence of or reference UMG's size, profitability and net worth, and that it employs a large law firm, which he will then compare to his lack of wealth in relation to UMG. Such evidence and argument is irrelevant and prejudicial.

5. UMG anticipates that Augusto will attempt to introduce evidence of UMG's tax treatment of promotional CDs, including calling as a witness, Jason Gaillen, Vice President and Group Controller for United States operations. Such evidence and argument is irrelevant, prejudicial and would confuse the jury.

### N. Issues Of Law Germane To The Case And UMG's Position.

1. A *prima facie* case of copyright infringement consists of (1) ownership of copyrights and (2) violation of one of the exclusive rights granted to a copyright owner. *See generally* 4 M. & D. Nimmer, *Nimmer On Copyright* § 13.01 (2006). Innocent intent or lack of knowledge is not a defense to liability. *See, e.g., Los Angeles News Serv. v. Conus Commc'n Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997). Works registered within five years of their publication constitute *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificate, 17 U.S.C. § 410, including ownership. *See, e.g., Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 357 (S.D.N.Y. 1992).

Advertising and offering to the public promotional CDs for auction on eBay is unauthorized distribution in violation of the exclusive right to distribute copyrighted works. 17 U.S.C. §§ 106(3) (exclusive distribution right), 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner … is an infringer of copyright"). Selling or making available for sale copyrighted works to the public are distributions in violation of the exclusive distribution right. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) (analogizing to Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d

1  199, 203 (4th Cir. 1997), for the proposition that when an individual makes works
2  "available to the public, [they] may be deemed to have distributed copies of the
3  works" in violation of the copyright owner's exclusive right of distribution) (citing
4  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) and
5  *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th
6  Cir. 1997)); *Matlow v. Solomon*, No. Civ. 04-6109-HO, 2005 WL 309976 *1 (D.
7  Or. Feb. 7, 2005) (defendant's offer for sale of unauthorized photographs by listing
8  them on eBay violated the Copyright Act, even though he later destroyed the
9  photographs); *see also Wildlife Internationale, Inc. v. Clements*, 591 F. Supp.
10 1542, 1547 (S.D. Ohio 1984) ("[T]he distribution, through sale or offer of sale to
11 the public or otherwise … constitutes an infringement."); *Universal City Studios*
12 *Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190 (D. Me. 2006) (using online
13 service to make available motion pictures over the Internet violated plaintiffs'
14 exclusive right to distribute the motion pictures).

> 2.   Once copyright infringement has been established:
> "[T]he copyright owner may elect, at any time before final judgment
> is rendered, to recover, instead of actual damages and profits, an
> award of statutory damages for all infringements involved in the
> action, with respect to any one work, for which any one infringer is
> liable individually, or for which any two or more infringers are liable
> jointly and severally."  17 U.S.C. § 504(c)(1).

*See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1114 (2d Cir. 1986) (upon proof of infringement, a copyright "owner may elect to recover – instead of actual damages and profits – statutory damages under § 504(c)(1) for those works whose copyrights were registered at the time the infringement occurred").

A plaintiff does not need to prove any actual damages to be entitled to an award of statutory damages. *See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (plaintiff "may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits") (citing David Nimmer, *Nimmer on Copyright* § 14.04[B], at 14.04[A], 14-44-45); *see also In re Aimster Copyright Litigation*, 334 F.3d 643, 649 (7th Cir. 2003) ("[A] copyright owner who can prove infringement need not show that the infringement caused him a financial loss."); *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) ("[A] plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement.").

Copyright infringement is "willful" when it is committed with knowledge or in reckless disregard of the copyright holder's rights. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (citations and quotations omitted); *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164 (E.D. Cal. 2006); *A&M Records, Inc. v. General Audio Video Cassettes, Inc.*, 948 F. Supp. 1449, 1457 (C.D. Cal. 1996); *see also Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) ("To refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief.").

3.  The first sale defense is limited to ***owners*** of copies or phonorecords. *See* 17 U.S.C. § 109 (a) ("The ***owner*** of a particular copy or phonorecord lawfully made under this title, or any person authorized by such ***owner*** is entitled, without authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.") (emphasis added). It expressly excludes from its

provision others who may obtain possession but not ownership of copies or phonorecords. *Id.* at § 109(d) ("The privilege[] described by subsection (a) [does] not, unless authorized by the copyright owner, extend to any person who has acquired possession of the copy or phonorecord from the copyright owner by rental, lease, loan or otherwise, without acquiring ownership of it."). If there is no first "sale," the first sale defense cannot apply. *See Adobe Sys, Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000) ("[A] copyright owner does not forfeit his right to distribution by entering into a licensing agreement."); *Microsoft v. Harmony Computers & Electronics*, 846 F. Supp. 208, 213 (E.D.N.Y. 1994) ("Entering into a license agreement is not a 'sale' for purposes of the first sale doctrine.").

4.  It is the defendant's burden on his first-sale affirmative defense to trace the chain of title of each specific work and show the existence of a first sale for that particular work. *See* H.R. Rep. No. 94-1476, at 81 ("The defendant in such actions clearly has the particular knowledge of how possession of the particular copy was acquired, and should have the burden of providing this evidence to the court. It is the intent of the Committee, therefore, that in an action to determine whether a defendant is entitled to the [first sale] privilege established by Section 109(a) and (b), … the burden of proving whether a particular copy was lawfully made or acquired should rest on the defendant."); *see also Harmony Computers & Electronics*, 846 F. Supp. at 212; *Novell, Inc. v. Unicom Sales, Inc.*, 2004 Copr. L. Dec. ¶ 28,900 at 37,684, No. C-03-2785 MMC, 2004 WL 1839117 *8 (N.D. Cal. August 17, 2004) (defendant bears burden of proof on first sale defense). The "failure to meet this burden of proving a chain of title precludes the applicability of the first sale doctrine." *Harmony Computers & Electronics*, 846 F. Supp. at 212-13. *See, e.g., Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1008 (S.D. Tex. 2000) (summary judgment on first sale defense because

Mitchell Silberberg & Knupp LLP

1835258.4

14

MEMORANDUM OF CONTENTIONS OF LAW AND FACT OF UMG RECORDINGS, INC.

1  "[d]efendants have not met their burden of tracing the chain of title to show a basis
2  for the first-sale doctrine"); *Too, Inc. v. Kohl's Department Stores, Inc.*, 2002
3  Copr. L. Dec ¶ 28,521 at 35,382, 2002 WL 31409852, (S.D. Ohio 2002) ("The
4  alleged infringer bears the burden of tracing the chain of title to prove that the first
5  sale doctrine applies."); *NCR Corp. v. ATM Exchange, Inc.*, 2006 U.S.Dist. LEXIS
6  30296 at *3-4, 81 U.S.P.Q.2d 1216 (S.D.Ohio May 17, 2006) (same); *see also*
7  W.F. Patry, 4 *Patry on Copyright* § 13:16 at 13-36 – 13-37 (2008) ("The first sale
8  doctrine is, therefore, adjudicated on a copy-by-copy basis: if the particular copy or
9  copies at issue are unauthorized, it is unavailing to defendant if other, authorized
10 copies have been sold.").

12      5.      39 U.S.C. § 3009(d) states that "[n]o mailer of any merchandise
13 mailed in violation of subsection (a) of this section … shall mail to any recipient of
14 such merchandise a bill for such merchandise or any dunning communications."
15 Its purpose is to "'control the unconscionable practice of persons who ship
16 unordered merchandise to consumers and then trick or bully them into paying for
17 it.'" *Kipperman v. Academy Life Ins. Co.*, 554 F.2d 377, 379 (9th Cir. 1977),
18 citing 116 Cong. Record at 22314 (June 30, 1970).  Thus, Section 3009(d) only
19 applies to mailing unordered commercial merchandise ***for sale*** and then seeking
20 payment from the consumer.  *See Blakemore v. Superior Court*, 129 Cal. App. 4th
21 36, 50 (2005); *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 958 (9th Cir. 2007)

23      6.      "Abandonment is governed by intention." *Group Property, Inc. v.*
24 *Bruce*, 113 Cal. App. 2d 549, 559 (1952).  "Abandonment is never presumed, but
25 must be made to appear affirmatively by the party relying thereon." *Id*.
26 Abandonment "requires something more than mere 'passivity.'" *Wm. Wolff & Co.*
27 *v. Canadian Pac. Ry. Co.*, 123 Cal. 535, 538 (1899).  There "must be some clear
28 and unmistakable affirmative act or series of acts indicating an intention to

1 relinquish ownership." 1 Cal. Jur. 3d, Abandonment, Lost, and Escheated Property § 14.

4   7. To be liable under 17 U.S.C. § 512(f), the takedown notices must have been sent pursuant to the DMCA to a DMCA registered agent. Section 512(f) is limited to "any person who knowingly materially misrepresents *under this section*" (emphasis added). "This section" is Section 512 of the Copyright Act, the DMCA.

10   8. The "'good faith belief' requirement in Section 512(c)(3)(A)(v) encompasses a subjective rather than objective standard." *See Motion Picture Ass'n of America, Inc. v. Rossi*, 391 F.3d 1000, 1004 (9th Cir. 2004) ("The overall structure of § 512 … supports the conclusion that § 512(c)(3)(A)(v) imposes a subjective good faith requirement upon copyright owners."). Thus, the copyright owner "cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Id*. (citing *See* Section 512(f)). Rather, the plaintiff must prove by substantial evidence "some actual knowledge of misrepresentation" on the part of the copyright owner. *Id*.; *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 12 (D. Colo. 2005). ("[A]s long as MGA acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f)."); *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 463, 468-69 (S.D.N.Y. 2007) (defendants "failed to present sufficient evidence that plaintiffs violated § 512(f)" despite finding no likelihood of success on plaintiff's claim of copyright infringement because it was "difficult to detect any similarities" between websites and any copying was "minimal and trivial"). Further, "legal support" is not an element of a subjective good faith belief. *See Dudnikov*, 410 F. Supp. at 1013 (rejecting position that because defendant's agent was a lawyer trained in IP law, it should be held to a higher standard: "Plaintiffs have not

presented any authority that supports applying a different standard than subjective good faith belief to lawyers trained in IP law.").

9. Augusto bears the burden of proving his actual damages by a preponderance of the evidence. *See* 9th Cir. Civ. Jury Instr. 5.1 (2007). Damages cannot be based upon speculation, guesswork, or conjecture. *Id*. Statutory damages and an injunction are unavailable for a violation of 512(f). *Compare Biosafe-One, Inc.*, 524 F. Supp. 2d at 469 (Section 512(f)'s "statutory language specifically provides for the remedy of damages and makes no mention of injunctive relief.").

### III. Bifurcation of Issues

UMG does not seek bifurcation.

### IV. Jury Trial

UMG has demanded a jury trial. All of the issues should be decided by the jury except injunctive relief.

### V. Attorneys' Fees

If UMG prevails on its copyright infringement claim, it is entitled to seek attorneys' fees and full costs under the Copyright Act, 17 U.S.C. § 505.

### VI. Abandonment of Issues

UMG has abandoned the following affirmative defenses to Augusto's counterclaim: (1) that Augusto assumed the license under California Civil Code section 1589; (2) that Augusto is collaterally estopped by the consent decree he entered into previously; (3) that Augusto is estopped from bringing his claim and (4) that Augusto waived his claim. Augusto has abandoned the following

affirmative defenses to UMG's claim: (1) that UMG is estopped from bringing its claim; (2) that UMG waived its claim; and (3) UMG is prevented from bringing its claim by the doctrine of unclean hands.

DATED: May 23, 2008

RUSSELL J. FRACKMAN
KARIN G. PAGNANELLI
AARON M. WAIS
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Russell J. Frackman
    Russell J. Frackman
    Attorneys for Plaintiff and Counter-defendant UMG RECORDINGS, INC.