DURIE TANGRI LLP
MICHAEL H. PAGE - # 154913 (mpage@durietangri.com)
JOSEPH C. GRATZ - # 240676 (jgratz@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

ELECTRONIC FRONTIER FOUNDATION
CORYNNE MCSHERRY - # 221504 (corynne@eff.org)
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x123
Facsimile: (415) 436-9993

Attorneys for Defendant
TROY AUGUSTO

KEKER & VAN NEST LLP
Benjamin Berkowitz - # 244441 (bberkowitz@kvn.com)
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Former Attorneys for Defendant
TROY AUGUSTO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TROY AUGUSTO d/b/a ROAST BEAST MUSIC COLLECTABLES AND ROASTBEASTMUSIC, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:07-cv-3106 SJO (AJWx)<br><br>**DEFENDANT TROY AUGUSTO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES**<br><br>Date: March 21, 2011<br>Time: 10:00 AM<br>Place: Courtroom 1 (Second Floor)<br>Judge: S. James Otero<br><br>Compl. Filed: May 10, 2007 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. LEGAL STANDARD............................................................................................2

III. ARGUMENT .........................................................................................................3

    A. Mr. Augusto was the prevailing party.........................................................3

    B. The *Fogerty* factors support an award of attorneys' fees. ..........................4

        1. Mr. Augusto successfully defended UMG's claim of copyright infringement. ...................................................................................4

        2. UMG's arguments were, at the very least, objectively unreasonable, if not frivolous. ..............................................................5

        3. The goals of compensation and deterrence support an award of attorneys' fees. ...............................................................................7

        4. The first sale doctrine is a vital component of copyright law.......8

    C. The requested attorneys' fees of $328,256.65 are reasonable. ...................9

IV. CONCLUSION....................................................................................................11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

*Beaty v. BET Holdings, Inc.*
  222 F.3d 607 (9th Cir. 2000) .................................................................................10

*Bobbs-Merrill Co. v. Straus*
  210 U.S. 339 (1908) ...............................................................................................8

*Buckhannon Bd. & Care Home, Inc.
  v. W. Va. Dep't of Health & Human Res.*
  532 U.S. 598 (2001) ...............................................................................................3

*Cadkin v. Loose*
  569 F.3d 1142 (9th Cir. 2009) ............................................................................3, 4

*Camacho v. Bridgeport Fin., Inc.*
  523 F.3d 973 (9th Cir. 2008) ................................................................................10

*Chalmers v. City of Los Angeles*
  796 F. 2d 1205 (9th Cir. 1986) .............................................................................10

*Davis v. City and County of San Francisco*
  976 F.2d 1536 (9th Cir. 1992) ..............................................................................10

*Entertainment Research Group, Inc.
  v. Genesis Creative Group, Inc.*
  122 F.3d 1211 (9th Cir. 1997) ................................................................................5

*Ets-Hokin v. Skyy Spirits Inc.*
  323 F.3d 763 (9th Cir. 2003) ....................................................................2, 3, 4, 8, 9

*Florentine Art Studio, Inc. v. Vedet K. Corp.*
  891 F.Supp. 532 (C.D. Cal. 1995) .....................................................................3, 4, 5

*Fogerty v. Fantasy, Inc.*
  510 U.S. 517 (1994) ........................................................................................ *passim*

*Gates v. Deukmejian*
  987 F.2d 1392 (9th Cir.1992) ...............................................................................10

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) ..............................................................................................10

*Klamath Siskiyou Wildlands Center v. U.S. Bureau of Land Mgmt*
  589 F.3d 1027 (9th Cir. 2009) ................................................................................3

*Magnuson v. Video Yesteryear*
  85 F.3d 1424 (9th Cir. 1996) ..................................................................................8

*Maljack Productions Inc. v. Goodtimes Home Video Corp.*
  81 F.3d 881 (9th Cir. 1996) ....................................................................................7

*Perfect 10, Inc. v CCBill, LLC*
  488 F.3d 1102 (9th Cir. 2007) ................................................................................5

*Rouse v. Law Offices of Rory Clark*
  603 F.3d 699 (9th Cir. 2010) .............................................................................9, 10

*Wall Data Inc. v. Los Angeles County Sheriff's Dep't.*
  447 F.3d 769 (9th Cir. 2006) ..................................................................................3

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Weissburg v. Lancaster School Dist.*
   591 F.3d 1255 (9th Cir. 2010) .................................................................................3

**Federal Statutes**

17 U.S.C. § 505 ........................................................................................................1, 2

39 U.S.C. § 3009(b) ......................................................................................................7

## I. INTRODUCTION

Defendant Troy Augusto is the prevailing party in this case. UMG Recordings, Inc. ("UMG") filed the instant action alleging that Mr. Augusto violated its copyrights by reselling promotional CDs distributed by the company. This Court, however, found that Mr. Augusto's conduct was protected by the first sale doctrine and, therefore, did not infringe UMG's copyrights. Although Mr. Augusto did not prevail on his counterclaim, he nonetheless succeeded on the central issue in litigation (UMG's claim of infringement) and achieved his primary goal in defending the suit—a judicial declaration of his right to resell UMG's promotional CDs under the first sale doctrine. As the prevailing party, it is within the Court's discretion to grant Mr. Augusto an award of reasonable attorneys' fees under the fee-shifting provision of the Copyright Act of 1976 ("Copyright Act" or "Act"). *See* 17 U.S.C. § 505.

Given the circumstances of this case, such an award is not only justified, but it will also advance the purposes of the Act. *First*, by successfully defending his rights against the objectively unreasonable infringement claims asserted by UMG, Mr. Augusto helped defend the already well-established boundaries of the first sale doctrine. *Second*, an award of fees will deter large corporations, such as UMG, from using their superior resources to pursue unwarranted litigation designed only to chill the lawful activity of individuals, who often do not have the financial wherewithal to adequately defend themselves. This case is a perfect example. Had it not been for counsel's willingness to take this case on a pro bono basis, Mr. Augusto would have been left with an unenviable decision: either incur substantial legal fees defending his rights or simply bend to the will of UMG and discontinue his obviously lawful conduct. A fee award, therefore, will not only compensate counsel in this case for defending Mr. Augusto's rights under the Copyright Act, but will likely encourage other defendants (and their lawyers) to do the same.

Accordingly, Mr. Augusto moves the Court for an award of attorneys' fees

on behalf of his pro bono counsel from the Electronic Frontier Foundation ("EFF"), a nonprofit, and the law firm of Keker & Van Nest LLP[1] (collectively, "pro bono counsel").[2]

## II. LEGAL STANDARD

The Copyright Act provides, in relevant part, that in any copyright action, the court in its discretion, "may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court suggested several "nonexclusive factors" courts may consider when evaluating a motion for attorneys' fees under § 505. Those factors include: (1) frivolousness; (2) motivation; (3) objective reasonableness in both the factual and legal components of the case; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 535 n.19 (citation omitted). The Supreme Court made clear, however, that courts are not required to consider all of these factors, nor do these factors act as limitation on a court's discretion. *Id*. at 535, 535 n.19; *see also Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). Rather, courts may consider any number of factors in deciding a fee motion, "so long as such factors are *faithful to the purposes of the Copyright Act* and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty*, 510 U.S. at 535 n.19 (emphasis added).[3] To that end, the Ninth Circuit

---

[1] Mr. Augusto is currently represented by Durie Tangri LLP and EFF. During the entirety of the proceedings before this Court, however, Mr. Augusto was represented by Keker & Van Nest and EFF. Declaration of Joseph Gratz in Support of Motion for Attorneys' Fees ("Gratz Decl."), ¶¶ 4, 9.

[2] Pursuant to Local Rule 7-3, Mr. Augusto's current counsel had several discussion with counsel for UMG regarding the substantive basis for this motion in an attempt to resolve matter out of court. These discussion took place telephonically because Mr. Augusto's counsel is based in San Francisco, while UMG's counsel is based in Los Angeles. Despite these efforts, the parties were unable to reach an agreement. Gratz Decl., ¶ 13.

[3] The Supreme Court, in *Fogerty*, also rejected the "dual" standard approach, whereby defendants were held a higher standard than plaintiffs when seeking attorneys' fees pursuant to §

has also suggested that courts consider the "degree of success obtained" by the prevailing party, the purposes of the Copyright Act, and whether an award of attorneys' fees may have a "chilling effect" or impose an "inequitable burden" on an impoverished plaintiff. *Ets-Hokin*, 323 F.3d at 766; *see also Wall Data Inc. v. Los Angeles County Sheriff's Dep't.*, 447 F.3d 769, 787 (9th Cir. 2006). These factors weigh heavily in favor of an award of attorneys fees in this case.

### III.    ARGUMENT

#### A.    Mr. Augusto was the prevailing party.

Under federal law, a prevailing party is one who "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit." *Weissburg v. Lancaster School Dist.*, 591 F.3d 1255, 1258 (9th Cir. 2010) (internal citation and quotation marks omitted). This standard applies equally to defendants who succeed on a significant issue and "achieve[] substantially all the benefits they hoped to achieve in defending the suit." *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D. Cal. 1995). Moreover, the success achieved must constitute a "material alteration of the legal relationship of the parties" and be "judicially sanctioned." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-605 (2001) (citation omitted); *see also Klamath Siskiyou Wildlands Center v. U.S. Bureau of Land Mgmt*, 589 F.3d 1027, 1030 (9th Cir. 2009).[4]

Based on these standards, Mr. Augusto was the prevailing party in this case. It was UMG that initiated this action, alleging that Mr. Augusto infringed its copyrights by reselling promotional CDs it distributed. This allegation was the basis for the entire lawsuit and the primary issue of dispute between the parties. This Court, however, rejected UMG's claim of infringement and granted summary

---

505. 510 U.S. at 520-521.

[4] The Ninth Circuit has made clear that this standard applies to the term "prevailing party", as used in the fee-shifting provision of the Copyright Act. *See Cadkin v. Loose*, 569 F.3d 1142 (9th

judgment in favor of Mr. Augusto. Specifically, the Court found that title to the CDs "transferred from UMG to the music industry insiders" that received them, and therefore, Mr. Augusto's secondhand sale of those CDs was "protected by the first sale doctrine." Summary Judgment Order, dated June 10, 2008, Doc. 112 ("Order") at 12:25-26. Thus, Mr. Augusto "clearly succeeded in a substantial part of this litigation, and achieved substantially all the benefits [he] hoped to achieve in defending the suit." *Florentine Art Studio*, 891 F.Supp. at 541. Moreover, the Court's Order certainly constitutes a judicially-sanctioned material alteration of the legal relationship between Mr. Augusto and UMG. *See Cadkin*, 569 F.3d at 1150 (holding that a defendant is the prevailing party so long as "the plaintiff is judicial precluded from refilling the claim against the defendant in federal court").

UMG will likely argue that Mr. Augusto is not the prevailing party because he did not prevail on his counter-claim under section 512(f) of Digital Millennium Copyright Act. But such an argument is without merit. As stated above, to be considered the prevailing party, Mr. Augusto needed only to prevail on a "significant issue" in the case and achieve "substantially" all of the benefit he hoped to achieve in defending the suit. *See Florentine Art Studio*, 891 F.Supp. at 541. By successfully defending UMG's claim of infringement, Mr. Augusto easily meets this standard.

It is therefore within the Court's discretion to award Mr. Augusto reasonable attorneys' fees. More importantly, as discussed below, such an award is warranted in this case and would be consistent with the basic principles of copyright law.

**B.    The *Fogerty* factors support an award of attorneys' fees.**

    1.   **Mr. Augusto successfully defended UMG's claim of copyright infringement.**

The first factor, degree of success obtained by the prevailing party, favors Mr. Augusto. *See, e.g., Ets-Hokin*, 323 F.3d at 766. In this case, Mr. Augusto

Cir. 2009).

prevailed on the primary issue in dispute—UMG's claim of copyright infringement. *See* Order at 12:25-26. Although Mr. Augusto did not prevail on his counter-claim under section 512(f), his success in defending UMG's infringement claim is more than sufficient to sway this factor in his favor. *Compare Florentine Art Studio, Inc*, 891 F.Supp. at 541 (defendants received attorneys fees despite innocently infringing two of the nine copyrights at issues).

### 2.    UMG's arguments were, at the very least, objectively unreasonable, if not frivolous.

The next factor—the frivolousness/objective unreasonableness of the losing party's claim(s)—also favors an award of attorneys' fees. *See Perfect 10, Inc. v CCBill, LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (requiring the court to consider the objective unreasonableness of a party's claims, "both in the factual and in the legal components of the case."); *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997) ("because the evidence in the record reveals that ERG [losing plaintiff] never had any evidence to support its . . . claims, the district court properly found that it was objectively unreasonable for ERG to have maintained these claims.").

This Court rejected UMG's legal and factual arguments on infringement and granted summary judgment in favor of Mr. Augusto. This, however, is not a typical case where both parties presented reasonable arguments, with one side prevailing because it simply has the better of the two positions. Here, the positions taken by UMG were legally and factually untenable. Thus, whether or not UMG had a *subjective* belief that Mr. Augusto was infringing its copyrights (*see* Order at 14:1-3), its pursuit of those claims was *objectively* unreasonable, if not frivolous.

UMG's position was that it had licensed the promotional CDs to the music industry insiders that received them and "under this license UMG retain[ed] title to the . . . CDs." *See* Order at 5:16-18. This argument, however, is not supported by undisputed facts of the case or the applicable law.

From a factual perspective, the only indication that UMG intended to license, rather than sell or give away, these unsolicited promotional CDs were written restriction placed on the labels of those CDs.[5] This purported "license," however, was clearly inconsistent with UMG's conduct in distributing its promotional CDs. As this Court noted, the evidence showed that "UMG [gave] the . . . CDs to music industry insiders, never to be returned." Order at 6:20. *First,* "[n]othing on the packaging . . . or in the licensing label require[d] that the recipients return the . . . CDs to UMG. *Id.* at 21-22. *Second,* UMG did not "request that any recipients return the . . . CDs" nor did it "otherwise make any affirmative effort to recover possession of the . . . CDs." *Id.* at 6:24-7:1. *Third,* and finally, UMG could not have recovered the CDs, even if it was so inclined, because it did "not keep permanent records identifying who received which . . . CDs." *Id.* at 7:1-3. In short, the undisputed facts of this case did not support UMG's claim of copyright infringement against Mr. Augusto.

Nor was there a reasonable legal basis for such a claim. As the Ninth Circuit has made clear on a number of occasions, including in this case, the "mere labeling of an arrangement as a license rather than a sale . . . is not by itself dispositive of the issue." Ninth Circuit Opinion at 332, filed January 4, 2011, DktEntry 32-1 ("Ninth Circuit Opinion") (citing, *e.g., Wall Data, Inc.*, 447 F.3d 769; *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330 (9th Cir. 1995); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993)); *see also* Order at 5:22-23. Rather, courts must analyze the "economic realities" of the transaction. Order at 5 (citing *Microsoft Corp. v. DAK Indus.*, 66 F.3d 1091, 1095 (9th Cir. 1995). After considering the "economic realities" of UMG's distribution of promotional CDs, this Court found that recipients were given "many critical rights of ownership,

---

[5] The statement provides "This CD is the property of the record company and is licensed to the intended recipient for personal use only. Acceptance of this CD shall constitute an agreement to comply with the terms of the license. Resale or transfer of possession is not allowed and may be punishable under federal and state laws." Order at 2:6-9.

including the right to perpetual possession and the freedom from obligations to UMG." Order at 8:8-10. The Court therefore held that such distribution is "properly characterized as a gift or sale, not a license[.]" *Id.* at 8:10-11.

UMG's position—that it maintained ownership of the unsolicited promotional CDs after they were shipped—is made even more unreasonable given the plain language of the Unordered Merchandise Statute, which confers upon the recipients of such unordered merchandise, "the right to retain, use, discard, or dispose of it in any manner he sees fit *without any obligation whatsoever to the sender.*" 39 U.S.C. § 3009(b) (emphasis added). As this Court noted, "UMG's actions fall with the plain text of § 3009." Order at 9:1. Similarly, on appeal, the Ninth Circuit held that the plain language of Unordered Merchandise Statute is "*utterly inconsistent* with the terms of the license that UMG sought to impose on the recipients" of its promotional CDs. Ninth Circuit Opinion at 334; *see, e.g., Maljack Productions Inc. v. Goodtimes Home Video Corp.,* 81 F.3d 881, 890 (9th Cir. 1996) ("MPI's copyright claims, which are completely contradicted by the language of [the contract] are, if not frivolous, at least factually unreasonable."). The Court also rejected UMG's arguments that the statute (1) only applies to merchandise to received by "consumers"; (2) only applies to merchandise for which payment is demanded; and (3) does not nullify agreements between the mailer and the recipient. Order at 9-11.

Because UMG's factual and legal arguments were objectively unreasonable, and its pursuit of a copyright infringement claim against Mr. Augusto unwarranted, this factor strongly supports an award of attorneys' fees.

3. **The goals of compensation and deterrence support an award of attorneys' fees.**

Another factor courts may consider in evaluating a fee motion is "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty,* 510 U.S. at 535 n.19 (citation omitted); *see also Maljack,* 81

F.3d at 890 ("we consider that an award of fees may deter baseless suits"). The Ninth Circuit expanded on the deterrence factor in *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996), suggesting that a fee award may be appropriate where a damages award is "insufficient to deter future copyright infringements." This is a particularly salient point in this case where, Mr. Augusto, an individual who lawfully sold promotional CDs, was sued by UMG, one of the world's largest music companies. In effect, UMG sought to use objectively unreasonable litigation in order to chill conduct that was protected under the first sale doctrine by imposing massive attorneys' fees on Mr. Augusto. And yet despite this disparity in resources, Mr. Augusto, as the defendant, had no hope of obtaining a damages award, even though he eventually prevailed. Thus, had it not been for the assistance pro bono counsel, Mr. Augusto would either have been saddled with significant legal expenses or deterred from exercising his legal rights altogether. Given this reality, an award of attorneys' fees would encourage other defendants and attorneys to defend important copyright principles and possibly deter copyright holders' from pursuing frivolous and/or unreasonable claims of infringement.

### 4. The first sale doctrine is a vital component of copyright law.

Finally, the Ninth Circuit has suggested that courts consider the underlying "purposes of the Copyright Act" when evaluating a motion for attorneys' fees. *Ets-Hokin*, 323 F.3d at 766; *Fogerty*, 535 U.S. at 535 n.19 (courts may consider a number of different factors, "so long as such factors are faithful to the purposes of the Copyright Act."). Here, an award of fees would only serve to promote the purposes of the Act.

The Supreme Court has often recognized that the monopolies authorized by the Copyright Act "are limited in nature and must ultimately serve the public good." *Fogerty*, 510 U.S. at 526 (citations omitted). One of the most important limitations on these statutory monopolies is the first sale doctrine, which has been part of American law for more than 100 years. *See Bobbs-Merrill Co. v. Straus*,

210 U.S. 339 (1908). Were it not for the first sale doctrine, lending libraries, video rental shops, and secondhand bookstores would all infringe a copyright owner's distribution right, as would selling a book at a garage sale or loaning a DVD to a friend. Such a world would not be consistent with the purposes of copyright law.

Thus, by defending his rights under the first sale doctrine, Mr. Augusto helped maintain the balance between the two fundamental, but competing, goals of copyright law: to encourage and reward creative work while "promoting broad public availability of literature, music, and the other arts." *Fogerty*, 510 U.S. at 526 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) (internal quotation marks omitted). And because copyright law must ultimately serve the public good, "it is peculiarly important that the boundaries of [the] law be demarcated as clearly as possible." *Id.* at 527. There can be no doubt, in this case, that Mr. Augusto's defense of UMG's lawsuit and the resulting precedent helped defend the well-established boundaries of the first sale doctrine. Thus, as the Supreme Court aptly noted, the "successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of the copyright." *Fogerty*, 510 U.S. at 527. These words certainly ring true in this case. This factor, therefore, weighs in favor of an award of fees.[6]

C.  **The requested attorneys' fees of $328,256.65 are reasonable.**

Once the Court determines that a fee award is appropriate, it must then determine the value of the work performed. In calculating a statutory fee award for a prevailing party, the law creates a strong presumption that a reasonable hourly rate multiplied by the hours reasonably spent in litigation—the "lodestar" figure—represents a reasonable fee. *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699,

---

[6] It is also worth noting that UMG, one of the largest music companies in the world, is obviously not an "impecunious plaintiff" and cannot argue that an award of attorneys' fees would have a "chilling effect" or "impose an inequitable burden." See *Ets-Hokin*, 323 F.3d at 766.

704 (9th Cir. 2010). And adjustments to the lodestar amount are reserved for rare or exceptional cases. *Id.*

To determine counsel's reasonable hourly rates, courts consider the rate prevailing in the community for similar work performed by attorneys of "comparable skill, experience, and reputation." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-1546 (9th Cir. 1992) (citation omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The lodestar sum ordinarily includes "full compensation for every hour spent litigating a claim." *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 611 (9th Cir. 2000) (citation omitted). To determine whether the hours counsel actually spent were reasonable, courts consider whether the hours were adequately documented and whether any of the hours claimed were unnecessary, duplicative, or, excessive. *Chalmers v. City of Los Angeles*, 796 F. 2d 1205, 1210 (9th Cir. 1986)). The law, however, does not require counsel to record in great detail how each minute of time is spent. *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Moreover, once the prevailing party has documented the hours for which it seeks attorneys, fees, the party opposing fee application has the burden of submitting evidence challenging the accuracy and reasonableness of the hours charged. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir.1992).

Under these standards, an attorneys' fees award in the amount of $328,256.65 is reasonable. The billable rates of pro bono counsel are consistent with prevailing hourly rates in the San Francisco Bay Area for lawyers of comparable education, expertise, and experience who handle matters of the type involved in this litigation. *See* Declaration of Benjamin Berkowitz in Support of Motion for Attorneys' Fees ("Berkowitz Decl."), ¶¶ 4, 5-6, 8, Exhs. A, B; Declaration of Fred von Lohmann in Support of Motion for Attorneys' Fees ("von

Lohmann Decl."), ¶¶ 4-5, 7-8, 10; Gratz Decl. ¶¶ 5-7, 12, Exh. A,   Thus, the claimed hourly rates are legally justified.

The declarations filed with this Motion further attest to the skill and expertise of the pro bono counsel who worked on this matter on Mr. Augusto's behalf. *See* Berkowitz Decl., ¶¶ 4, 5-6, 8, Exhs. A, B; von Lohmann Decl., ¶¶ 4-5, 7-8, 10; Gratz Decl., ¶¶ 5-7, 12, Exh. A.  As the Court will see in those declarations and other supporting materials, the hours spent by pro bono counsel on this matter are reasonable in light of the task with which they were presented.

Finally, this motion excludes time spent working on Mr. Augusto's counterclaim under section 512(f). Berkowitz Decl., ¶ 7; von Lohmann Decl., ¶ 9.

## IV.   CONCLUSION

For all of the foregoing reasons, Mr. Augusto respectfully requests a fee award in the amount of $328,256.65 on behalf of pro bono counsel.

Dated: February 8, 2011

DURIE TANGRI LLP,
ELECTRONIC FRONTIER FOUNDATION


By: /s/ Joseph Gratz
   JOSEPH C. GRATZ
   Attorneys for Defendant
   TROY AUGUSTO