DURIE TANGRI LLP
MICHAEL H. PAGE - # 154913 (mpage@durietangri.com)
JOSEPH C. GRATZ - # 240676 (jgratz@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

ELECTRONIC FRONTIER FOUNDATION
CORYNNE MCSHERRY- # 221504 (corynne@eff.org)
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x123
Facsimile: (415) 436-9993

Attorneys for Defendant
TROY AUGUSTO

KEKER & VAN NEST LLP
BENJAMIN BERKOWITZ - # 244441 (bberkowitz@kvn.com)
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Former Attorneys for Defendant
TROY AUGUSTO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>TROY AUGUSTO d/b/a ROAST BEAST MUSIC COLLECTABLES AND ROASTBEASTMUSIC, an individual; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No. 2:07-cv-3106 SJO (AJWx)<br><br>**DEFENDANT TROY AUGUSTO'S REPLY BRIEF IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES**<br><br>Date:      March 21, 2011<br>Time:     10:00 AM<br>Place:    Courtroom 1(Second Floor)<br>Judge:   S. James Otero<br><br>Compl. Filed: May 10, 2007 |

# I.    INTRODUCTION

Troy Augusto was sued for copyright infringement by UMG Recordings, Inc. ("UMG"), one of the largest record companies in the world, and prevailed. UMG now claims that it too was a prevailing party because the Court found that it had a subjective good-faith, albeit incorrect, belief that Mr. Augusto was infringing it copyrights.  The law, however, requires more than simply winning a claim to be considered a prevailing party.  Rather, the party seeking fees must show that its victory constitutes a **material alteration** of the legal relationship between the parties.  This Court's determination that Mr. Augusto did not infringe UMG's copyrights certainly meets this standard; UMG's mistaken, if genuine, belief to the contrary does not.

As the sole prevailing party, the Court has the discretion to award Mr. Augusto attorneys' fees; more importantly, such an award is justified in this case. The facts are straightforward.  UMG distributed unsolicited promotional CDs to various music industry insiders.  Although the CDs were affixed with a written statement purporting to license the disks to the recipients, UMG did nothing to enforce these alleged licenses vis-à-vis the recipients.  In fact, the company did not even keep track of where particular copies were or what use was being made of them.  In short, UMG did not act in a manner consistent with a company attempting to protect a licensed product.  Nonetheless, UMG decided to bring a copyright infringement claim against Mr. Augusto for selling these promotional CDs secondhand.

As this Court (and the Ninth Circuit) held, however, Mr. Augusto's conduct was clearly protected under the first sale doctrine because title to the promotional CDs transferred to the recipients upon shipment.  Among other reasons, this conclusion was obvious given the plain language of the Unordered Merchandise Statute, 39 U.S.C. § 3009, which provides that a recipient of unsolicited merchandise may "retain, use, discard, or dispose" of such merchandise "in any

1

manner he sees fit *without any obligation whatsoever to the sender*." *Id.* at § 3009(b) (emphasis added). In light of this statute, as well as underlying facts of this case, UMG should never have pursued a copyright infringement claim against Mr. Augusto, and its decision to do so was unreasonable.

For these reasons, as well as those set forth in Mr. Augusto's opening brief, an award of attorneys' fees is warranted in this case.

## II.   ARGUMENT

### A.   Mr. Augusto is the *sole* prevailing party.

While UMG concedes, as it must, that Mr. Augusto prevailed on its claim of copyright infringement, it argues that both parties should be considered "the prevailing party" because UMG defeated Mr. Augusto's counterclaim under section 512(f) of the Digital Millennium Copyright Act ("DMCA").[1] *See* Opposition ("Opp.") at 2:15-21. UMG therefore argues that both parties should be awarded fees.[2] *Id.* But all claims are not created equal for the purpose of determining which party is "the prevailing party" under a federal fee-shifting statute such section 505 of the Copyright Act.[3] In this case, Mr. Augusto stands alone as the prevailing party.

As explained in Mr. Augusto's opening brief (but ignored in UMG's opposition), "the prevailing party" is one that succeeds on a "significant issue in the litigation" which achieves some of the benefit that the party sought in bringing (or defending) the suit. *Weissburg v. Lancaster School Dist.*, 591 F.3d 1255, 1258 (9th Cir. 2010); *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D. Cal. 1995). Moreover, the success achieved must constitute a judicially-sanctioned "**material alteration the legal relationship between the parties**."

---

[1] 17 U.S.C. § 512(f).

[2] UMG argues, in the alternative, that neither party should be awarded fees. *See* Opp. at 15:19-26. This argument fails for the same reasons as UMG's argument that both parties should be. *See infra*.

[3] 17 U.S.C. § 505

*Buckhannon Bd. & Care Home, Inc. v. W Va. Dep't of Health and Human Res.*, 532 U.S. 598, 604-605 (2001) (citation omitted).

Here, Mr. Augusto achieved substantially all the benefits he hoped to achieve in defending UMG's claim of copyright infringement: (1) he established that his business of buying promotional CDs and reselling them on eBay was lawful; and (2) he helped enforce the well-established boundaries of the first sale doctrine. *See* Summary Judgment Order, Doc. 112 ("Order") at 12:25-27.  UMG, on the other hand, only succeeded in arguing that it had a subjective good faith—albeit **objectively incorrect**—belief that Mr. Augusto was infringing its copyrights at the time it erroneously issued takedown notices to eBay under section 512(c) of the DMCA.[4]  *Id.* at 13:1-23.  While the former certainly constitutes a material alteration of the legal relationship between the parties in favor of Mr. Augusto, the latter simply denotes UMG's mistaken (but apparently genuine) belief that Mr. Augusto was infringing its copyrights.  Thus, even though UMG prevailed on Mr. Augusto's counterclaim, its conduct was still wrong as a matter of law.

Moreover, Mr. Augusto's victory materially altered the legal relationship between the parties "in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).  Mr. Augusto's successful defense of UMG's infringement claim is precisely what Congress sought to promote in crafting the Copyright Act's attorney fee provision.  "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the law's boundaries be demarcated as clearly as possible.  Thus, a defendant seeking to advance meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious infringement claims." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 517-18 (1994).

---

[4] 17 U.S.C. § 512(c).

1  Those who, like Mr. Augusto, are wrongly accused of copyright infringement are
2  encouraged by the fee provision to fight back, and they are awarded fees if they are
3  successful, even if that success is not complete.  *See, e.g.*, *Allen v. Ghoulish*
4  *Gallery*, CIV. 06CV371 NLS, 2008 WL 474394 (S.D. Cal. Feb. 19, 2008)
5  (awarding attorney fees to a copyright defendant as the prevailing party even
6  though its counterclaims against the copyright holder were unsuccessful); *see also*
7  *Florentine Art Studio*, 891 F. Supp. at 541 (awarding attorneys' fees to copyright
8  defendants despite the fact that defendants' were found to have innocently
9  infringed two of the nine copyrights at issue).[5]
10      For these reasons, as well as those set forth in Mr. Augusto's opening brief,
11 Mr. Augusto is the **sole** prevailing party, and it is within the Court's discretion to
12 award him reasonable attorneys' fees.

**B.    An award of fees is warranted because UMG's copyright infringement claim was objectively unreasonable.**

15     Despite the Order of this Court (and unanimous opinion of the Ninth
16 Circuit)[6], UMG still contends that its infringement claim was objectively
17 reasonable.  *See* Opp. at 5:25-11:7; *see also UMG Recordings, Inc. v. Augusto*, 628 F.3d
18 1175, 1177 (9th Cir. 2011) ("*Augusto II*").  It was not.

19      *First*, UMG barely mentions the fact that this Court (as well as the Ninth
20 Circuit) soundly rejected its argument that the Unordered Merchandise Statute was
21 inapplicable to the company's unsolicited distribution of promotional CDs to
22 music industry insiders.  *See* Order at 8:14-11:26.  But the Court did more than
23 simply reject UMG's position, it found that "**UMG's actions [fell] within the**

---

[5] Furthermore, the Copyright Act provides for an award of attorney fees to "***the*** prevailing party." § 505 (emphasis added).  The statute's reference to the prevailing party is phrased in the singular: in every case, there is a maximum of one prevailing party.  Mr. Augusto is aware of no case—and UMG cites none—in which both sides are found to have prevailed.

[6] Specifically, the Ninth Circuit held that UMG's unsolicited distribution of promotional CDs constituted "a sale of the discs to the recipients for purposes of the first sale doctrine." *Augusto II*, 628 F.3d at 1177.

**plain text of the § 3009**." Order at 9:1 (emphasis added).  And the Ninth Circuit agreed that the statute was "**utterly inconsistent** with the terms of the license that UMG sought to impose on the recipients" of its promotional CDs.  *Augusto II*, 628 F.3d at 1181 (emphasis added).  This is the only possible conclusion given the plain language of the Unordered Merchandise Statute, which provides that a recipient of unsolicited merchandise may "retain, use, discard, or dispose" of such merchandise "in any manner he sees fit **without any obligation whatsoever to the sender**."  39 U.S.C. § 3009(b) (emphasis added); *see also Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) ("It is well settled in this court that statutory interpretation begins with the statutory text, and ends there as well if the text is unambiguous.") (citation omitted).

Because the Unordered Merchandise Statute clearly requires a finding that UMG transferred title of its unsolicited promotional CDs to the recipients, it necessarily follows that Mr. Augusto's secondhand sale of those CDs is protected by the first sale doctrine.  *See* 17 U.S.C. § 109(a); *see also Quality King Distribs., Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998) ("[O]nce the copyright owner places a copyrighted item into the stream of commerce . . ., he has exhausted his exclusive statutory right to control its distribution.").  Therefore, UMG should not have pursued an infringement claim against Mr. Augusto in the first instance.

UMG nonetheless argues that this case presents a "novel" issue because, according to UMG, there are no prior cases applying the Unordered Merchandise Statute under the exact circumstances presented here.  Opp. at 10:19-22.  But even assuming no other court has decided this specific issue in this particular context, UMG's interpretation of the statute was clearly at odds with its plain meaning.  Moreover, and despite UMG's argument to the contrary, it is more likely that this issue has never been raised in this context precisely **because** the language of the statute is so clear—not because the issue is novel or complex.

*Second*, UMG focuses on purported minor differences between this Court's analysis and that of the Ninth Circuit to suggest that there was "uncertainty in the law at the time UMG filed its lawsuit." Opp. at 10:26-27. None of these issues was dispositive, however. For example, UMG implies that this Court found that Mr. Augusto could directly invoke the Unordered Merchandise Statute[7], while the Ninth Circuit held that the statute, although dispositive on the issue of ownership, could not be directly invoked by Mr. Augusto.[8] *See* Opp. at 10:12-19. Even if this were the case, it is a meaningless distinction for purposes of determining the objective reasonableness of UMG's infringement claim. Ultimately, both courts found that the statute was applicable and, more importantly, that it was dispositive with respect to the issue of ownership of the promotional CDs distributed by UMG. *See* Order at 11:24-26; *Augusto II*, 628 F.3d at 1181. Any difference of opinion about *how* the statute applied is irrelevant to the ultimate outcome.

*Third*, UMG relies heavily on the district court's finding that UMG had a "subjective good faith belief that Mr. Augusto was infringing its copyrights" at the time UMG issued its erroneous takedown notices to eBay pursuant to section 512(c) of the DMCA. *See* Order at 13:13-14. This, however, is beside the point. UMG's **subjective** belief that its infringement claim was reasonable has no bearing on whether the claim was **objectively** reasonable.

*Fourth*, UMG argues that its claim was objectively reasonable because, according to UMG, the law remained uncertain following a series of software licensing cases decided by the Ninth Circuit. *See* Opp. at 7:3-21 (citing *Wall Data, Inc. v. Los Angeles Cnty. Sheriff's Dep't.*, 447 F.3d 769 (9th Cir. 2006); *Triad Sys.*,

---

[7] It does not appear that this Court actually made such a finding; rather, the Court indicated, correctly, that Ninth Circuit had determined that the Unordered Merchandise Statute "did create a private right of action." *See* Order at 11:15-17 (citing *Kipperman v. Academy Life Ins. Co.*, 554 F.2d 377, 380 (9th Cir. 1977).

[8] *See Augusto II*, 628 F.3d at 1181 ("The significance of the Unordered Merchandise Statute is not that it applies to Augusto, but that it confers on the recipients the 'right to retain, use, discard, or dispose of [the CDs] in any manner that [they] see[ ] fit, without obligation to the sender,' UMG.") (quoting 39 U.S.C. § 3009(b)).

*Corp. v. Se. Express Co.*, 64 F.3d 1330 (9th Cir. 1995); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993).  But these cases do not help UMG's cause.  As the Ninth Circuit has made clear on a number of occasions, including in this case, the "mere labeling of an arrangement as a license rather than a sale . . . is not by itself dispositive of the issue." *Augusto II*, 628 F.3d at 1180 (citing, *e.g.*, *Wall Data, Inc.*; *Triad Sys. Corp.*; *MAI Sys. Corp.*).  Rather, there must be additional evidence that a license was intended.  *See Wall Data, Inc.*, 447 F.3d at 785.  There no such evidence in this case.  As this Court noted, UMG did not even "keep permanent records identifying who received which [promotional] CDs." Order at 7:1-3.

Sidestepping the lack of evidence regarding the existence of a license, UMG focuses on (1) the music industry "custom and practice" of distributing unsolicited promotional CDs to industry insiders; (2) the fact that Mr. Augusto received infringement notices from other record companies; and (3) that Mr. Augusto agreed to a consent judgment in another case.  *See* Opp. at 7:22-9:8.  But these facts are only relevant to UMG's subjective belief when it erroneously sent takedown notices to eBay.  *See* Order at 13:1-23.  They have nothing to do with whether UMG licensed the promotional CDs to the original recipients, nor are they relevant to the applicability of the Unordered Merchandise Statute.

For these reasons, as well as those set forth in Mr. Augusto's opening brief, UMG's copyright infringement claim was objectively unreasonable.  Moreover, because UMG's entire opposition is based on the incorrect premise that its claim was, in fact, objectively reasonable, the remaining *Fogerty*[9] factors—compensation and deterrence, underlying purposes of the Copyright Act, and motivation—also support an award of fees.[10]  Such an award is therefore justified in this case.

_____

[9] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

[10] Mr. Augusto addresses each of these factors in his opening brief (Mot. at 4:23-9:19), and will not burden the Court by repeating those arguments here.  It is, however, worth noting UMG's argument that Mr. Augusto did not address the issue of motivation in his opening brief and

## C.   The attorneys' fees claimed by Mr. Augusto are reasonable.

In the last few pages of its opposition, UMG asserts a cursory list of reasons why it believes that the attorneys' fees claimed by Mr. Augusto are unreasonable. None of the reasons are persuasive.

*First*, UMG complains that Mr. Augusto's motion is not properly supported by adequate records.  This simply is not the case.  The party seeking an award of fees is required to submit "evidence supporting the hours worked and rates claimed."  *Hennsley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Mr. Augusto satisfied this burden by submitting a detailed account of the number of hours each timekeeper billed to this matter each day, including each timekeeper's billable rate. *See* Declaration of Benjamin Berkowitz in Support of Motion for Attorneys' Fees ("Berkowitz Decl."), Exh. C; Declaration of Fred von Lohmann in Support of Motion for Attorneys' Fees ("von Lohmann Decl."), Exh. A.  Moreover, all of the underlying time records were reviewed for accuracy by attorneys that worked on this matter.  *See* Declaration of Joseph Gratz in Support of Motion for Attorneys' Fees ("Gratz Decl.") ¶ 11; von Lohmann Decl. ¶ 9.  To the extent the Court requires additional, more detailed billing information, Mr. Augusto would be happy to submit such information under seal (excluding any records that evidence attorney-client communications).

*Second*, UMG complains that Mr. Augusto has not submitted sufficient evidence to justify his counsel's hourly rates.  *See* Opp. at 18.  Specifically, UMG points out that Mr. Augusto's lawyers only aver that their rates are consistent with prevailing rates in the San Francisco Bay area, not Los Angeles, where the matter was litigated.  *Id*. at 18-19.  But this argument is easily refuted by simply looking

---

therefore must agree that UMG pursued this action in good faith.  Mr. Augusto makes no such concession.  As UMG acknowledges in its opposition (*see* Opp. at 13:15-17), Mr. Augusto specifically argued in his opening brief that "UMG sought to use objectively unreasonable litigation in order to chill conduct that was protected under the first sale doctrine by imposing massive attorneys' fees on Mr. Augusto."  Motion at 8:7-9.

DEFENDANT TROY AUGUSTO'S REPLY BRIEF IN SUPPORT OF
MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES
CASE NO.  2:07-cv-3106 SJO (AJWx)

at the fee motion (and supporting declaration) submitted by **UMG**.  *See* Memorandum in Support of UMG's Motion for Attorneys' Fees, Doc. 137 and Declaration of Russell Frackman in Support of UMG's Motion for Attorneys' Fees, Doc. 138 ("Frackman Decl.").  It shows that, in 2008, the hourly rates charged by UMG's three primary lawyers,[11] who are based in Los Angeles, were $700, $480, and $390 per hour, respectively.  *See*, *e.g.*, Frackman Decl., Exh. 1 at pgs. 77, 96, 107.  During that same year, Mr. Augusto's primary three lawyers— Michael Page, Fred von Lohmann, and Joseph Gratz—had hourly rates of $675, $550, and $400 per hour, respectively.  Berkowitz Decl., Exh. C; von Lohmann Decl., Exh. A.  In short, the hourly rates of Mr. Augusto's lawyers are comparable to the hourly rates charged by UMG's Los Angeles-based counsel.  Assuming that UMG believes that its own counsel's hourly rates were reasonable by Central District standards, it must necessarily concede that the hourly rates of Mr. Augusto's counsel are reasonable as well.

        ***Third***, and finally, UMG contends that Mr. Augusto does not disclose the nature of his fee agreement with his attorneys "beyond that he was represented *pro bono*."  *See* 18:20-19:1.  But this was, in fact, the billing arrangement between Mr. Augusto and his counsel (*see* Berkowitz Decl. ¶¶ 3, 6), and UMG does not cite any authority to suggest that more is required.  *See* Opp. at 19:1-7 (citing *Morrison v. C.I.R.*, 565 F.3d 658, 659-60 (9th Cir. 2009) (holding that a taxpayer that prevails in a civil tax proceeding is not barred from recovering fees solely because his fees were initially paid by a third party); *Crescent Publ'g Grp., Inc. v Playboy Enterprises, Inc.*, 246 F.3d 142, 150-51 (2d Cir. 2001) (holding that fees a paying client *actually paid* are a significant, although not controlling, factor in determining what fee is reasonable).[12]

---

[11] Russell Frackman, Karen Pagnanelli, and Aaron Wais.  *See* Frackman Decl., Exh. 1 at pgs. 77, 96, 107.

[12] UMG also filed a separate set of boilerplate objections to the declarations submitted by counsel in support of Mr. Augusto's fee motion.  *See* Doc. 141.  These objections, which are not

9

In sum, Mr. Augusto has sufficiently documented the hours for which he seeks attorneys' fees, and UMG has not, as required by law, submitted competent evidence challenging the accuracy and reasonableness of those fees. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Therefore, the Court should award Mr. Augusto all of his claimed fees.

## III. CONCLUSION

For the reason stated herein, as well as the reasons stated in the Mr. Augusto's opening brief, Mr. Augusto respectfully requests an award of attorneys' fees in the amount of $328,265.65.

Dated: March 7, 2011                              DURIE TANGRI LLP,
                                                  ELECTRONIC FRONTIER
                                                  FOUNDATION


                                              By:  _/s/ *Joseph C. Gratz*_____
                                                  JOSEPH C. GRATZ
                                                  Attorneys for Defendant
                                                  TROY AUGUSTO

supported a single legal precedent, are meritless. Nonetheless, to the extent an objection coincides with an issue raised in UMG's opposition, it is addressed herein. *See supra*. Finally, should the Court find that the evidence submitted in support of this motion is in anyway insufficient, Mr. Augusto would be happy to submit any additional evidence the Court requires (under seal, if necessary, and excluding privileged information).

10